THE CITY OF PLAINFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. THE COURIER-NEWS, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT, AND THE DAILY JOURNAL, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 29, 1975—Decided May 30, 1975.

Before Judges HALPERN, CRAHAY and WOOD.

*Mr. Matthew D. F. Wade* argued the cause for appellant (*Mr. Richard R. O'Connor,* attorney; *Mr. Wade* on the brief).

*Mr. Lawrence Schechterman* argued the cause for respondent The Courier-News (*Mr. Schechterman* of counsel and on the brief).

*Mr. Edward W. Beglin, Jr.,* attorney for respondent The City of Plainfield, filed a statement in lieu of brief.

The opinion of the court was delivered by

WOOD, J. S. C., temporarily assigned. The judgment of the Law Division is affirmed, essentially for the reasons stated by Judge McGrath in his letter opinion. We recognize that the sum effect of the judgment is a holding that a newspaper may have more than one place of publication. *Hunterdon County Democrat, Inc. v. Recorder Pub. Co.,* 117 *N. J. Super.* 552 (Ch. Div. 1971). The Legislature has apparently acquiesced in the holding of that case, and absent its expression to the contrary, *In re Keogh-Dwyer,* 45 *N. J.* 117 (1965), the soundest judicial course, in our view, is case-by-case treatment on the issue of "publication."

In any event, as Judge McGrath noted, Plainfield, being a city, may designate an official newspaper, *N. J. S. A.* 40:53–

1, but in doing so is not bound by the restrictive provisions of *N. J. S. A.* 50:53–2. Plainfield essentially sought a declaratory judgment as to whether respondent, *The Courier News,* was "qualified to be designated its official newspaper * * *." *N. J. S. A.* 40:53–1. *The Courier-News* has many incidents of publication in Plainfield. It maintains an office and a staff of at least seven employees in the city, does a substantial part of its business there and has its greatest circulation there. Both historically and at present it is Plainfield's newspaper and satisfies the legislative criteria of stability and continuous existence in the city. *In re Bond Printing Co., Inc.,* 135 *N. J. L.* 478 (E. & A. 1947). Whether it would satisfy, in any given case, the myriad publishing requirements mandated as to various types of official notices in *N. J. S. A.* Titles 40 and 40A[1] should await determination when the question is raised in an appropriate case.

The judgment is affirmed.

HALPERN, P. J. A. D. (dissenting). The narrow issue presented in this declaratory judgment suit is whether the City of Plainfield may designate *The Courier-News* (*Courier*) as its official newspaper under *N. J. S. A.* 40:53–1. This statute is merely permissive, and I agree with the majority that by a literal reading of the statute Plainfield may designate the *Courier* as its official newspaper. I also agree that whether the *Courier* is authorized to publish legal notices required by law to be advertised by Plainfield, requires a determination as to whether the *Courier satisfies* "the myriad publishing requirements mandated as to various types of official notices" in a host of different statutes.

However, I am unable to agree that "a newspaper may have more than one place of publication." *N. J. S. A.* 40:53–2, while it excepts cities from its terms, clearly mandates that municipal ordinances and other public notices which any mu-

---

[1] Judge McGrath, without suggesting that his list was exhaustive, noted 37 statutes setting forth distinct and variant publication requirements.

nicipality is required by law to publish (unless otherwise specifically provided) shall be published in at least "one newspaper published and circulating in the municipality, and if there be no such newspaper, then in at least one newspaper published in the county in which the municipality is located and circulating in the municipality."[1] Thus, the nub of the issue is to determine what the Legislature meant when it used the term "published" in various statutes dealing with problems of giving public notice.

While it is difficult, and at times a precarious pastime, to arrive at the legislative intent which emanates from the great variety of statutes on the subject, as set out in the trial judge's opinion, I am convinced it was the Legislature's underlying intent to have a local newspaper utilized, whenever possible, to give the local community notice of proposed governmental action. To that end the Legislature, in most of the statutes dealing with the subject of public advertising, required the governing body involved to place the mandated notices in newspapers "published" in the area affected — although other conditions, in varying forms, were also appended. It appears obvious the Legislature envisaged that a newspaper is capable of having but one official or principal office of publication — or put another way, can only be "published" in one place. It may have as many branch offices as it desires, as does the *Courier* since it maintains small staffs in five branch offices in various counties to carry out its function to provide news coverage for many municipalities in at least six counties.

---

[1]To point up the inconsistency between *N. J. S. A.* 40:53–1 and 2 and the great variety of statutes dealing with advertising official notices, we need only look at as an example *N. J. S. A.* 40:187–1 which mandates that "cities" shall publish their annual financial statements "in at least one newspaper * * * printed and published * * *" in that city. Obviously, under this statute the *Courier* could not publish Plainfield's annual financial statements since it does not print its newspaper in Plainfield.

Admittedly, the place where a newspaper is physically printed is not, standing alone, its principal office of publication. I envision a principal office of publication, or where a newspaper is deemed "published," as the hub of a wheel whose spokes represent its various branch offices where parts of its operations are carried out so that it can function as a complete organ. It is the place where it intends to have its permanent home of publication.

Viewing the *Courier's* present mode of operation, the following is undisputed: (a) all of its newspaper and other printing has been done for more than two years and is now being done at its new offices and plant in Bridgewater Township, Somerset County, New Jersey; (b) its editorial and circulation departments are in Bridgewater, and approximately 200 of its 230 employees, including its editor, president, assistant treasurer, circulation manager, advertising manager, accounting and financial advertising records, are all in Bridgewater; (c) the information, news and business gathered in the *Courier's* branch offices are collated in Bridgewater and printed there; (d) its delivery trucks (about 16) are loaded with its daily papers at Bridgewater and dispersed to the various communities it serves — although it points out that the first truck to leave is specifically directed to go to Plainfield; (e) the *Courier's* masthead, including its advertising section, gives its mailing address as P.O. Box 3600, Somerville, N. J.; (f) it distributes approximately 1,000 papers daily as second-class matter from the Somerville Postoffice (Bridgewater has no postoffice) in accordance with the postal laws and regulations of the United States; (g) its subcontractors for rural route deliveries get their copies of the *Courier* at Bridgewater; (h) its listing in the yellow pages of the Plainfield-Somerville telephone book is given as 1201 U. S. Highway 22, Somerville, N. J., and (i) by resolution dated January 1, 1975, the Bridgewater Township Committee designated the *Courier* as its official newspaper for 1975 "for the publication of all legal notices and advertise-

ments of the Township and all its Boards, Bodies, Committees, Offices and Agencies, as required by *N. J. R. S.* 40:53-1, and the statutes in such case made and provided." These incidents, considered cumulatively, indicate to me that the *Courier* is "published" in Bridgewater and not Plainfield.

If a newspaper may legally have more than one official office of publication, or principal office, or be deemed to be "published" in more than one place, however statutorily termed, then it logically may be designated as the official newspaper under *N. J. S. A.* 40:53-1 and 2 for as many municipalities wherein its newspaper circulates subject to the limitations set forth by the majority herein. I suggest this view may result in large newspapers frustrating the legislative intent, and perhaps put smaller newspapers out of business. However, if my view is correct then Plainfield's designation of the *Courier* as its official newspaper would be an empty gesture since most of the statutes dealing with advertising of public notices, as heretofore indicated, require it to be "published" in Plainfield.

What I have heretofore said with respect to the *Courier* applies with equal force to *The Daily Journal,* which newspaper, in my opinion, "publishes" in Elizabeth; except that it may qualify to publish Plainfield's legals if there is no newspaper which "publishes" and "circulates" in Plainfield. If the results arrived at by the majority and this dissent appear to be inconsistent or an ineffective method of giving Plainfield residents notice of the city's legal advertising, I suggest it is a matter which should be clarified by appropriate legislation.

In summary, when the Legislature speaks of a newspaper as being "published" in a given municipality, I construe it to mean the place where a newspaper performs its principal functions as a newspaper. I analogize it to an individual's domicile — the law permits him to have but one domicile, but he may have as many residences as he desires. See *Trustees of Princeton University v. Trust Co. of N. J.,* 22 *N. J.* 587, 595-596 (1956). So here, a newspaper may have one

primary office of publication from which it "publishes," but it may have as many branch offices as it deems essential for its operation.